THOMAS N. BIEDLEMAN, SUSAN S. VARNELL AND
J. O. TATE

*v.*

THE STATE OF ILLINOIS.

*Opinion filed December 12, 1890.*

WATERS—*State may abandon locks and dams without liability to those using the water privileges.* Under Sec. 8, Chap. 19, R. S. entitled, "Canals and Improvement of Illinois and Little Wabash Rivers," which provides that the Canal Commissioners may wholly abandon or destroy the work by the construction of which the water privilege shall have been created whenever, in the opinion of the legislature, such work shall cease to be advantageous to the State, the State may at any time abandon locks and dams without being liable to those who have been availing themselves of the water privilege afforded by them.

The claimants filed their petition with the Auditor of Public Accounts on the 22d day of July, A. D. 1889, in which they claim damages to the amount of $16,700.00.

It appears from claimant's petition that previous to July 1, 1887, they had purchased a mill site at Carmi on the Little Wabash river in White county, Illinois, and had improved said mill at a cost of several thousand dollars; that said mill was constructed for the purpose of sawing logs into lumber and that there was an abundance of timber on both sides of the river below Carmi and above New Haven in Gallatin county accessible to said mill by said river.

Claimants show by their petition that they had in the spring and summer of 1887 a large amount of timber cut into logs and banked on the margin of the stream ready for transportation to their said mill. That on account of the water being let out of the dam at New Haven they were prevented from getting their logs to said mill and that they thereby met with great loss, with other particulars relative to their losses not deemed material to mention.

Claimants allege that many years ago the State of Illinois constructed a dam across the Little Wabash

river at New Haven thereby effecting slack water navigation between that point and Carmi; and that at the session of the Legislature in 1887, by an act approved April 1, 1887, and in force July 1, 1887, the Canal Commissioners of the State of Illinois were authorized within six months after the act should become a law to remove or cause to be removed the said dam at New Haven and that said dam was so removed in pursuance of said act; that their damages were consequent upon such removal and that the State is liable therefor. No authority has been cited sustaining this view and we do not think it can be sustained. By a reference to chap. 19 of the Revised Statutes, entitled "Canals and Improvement of Illinois and Little Wabash rivers" in the 6th clause of the 8th section, which has been in force since July 1, 1874, we find that the Canal Commissioners were authorized "wholly to abandon or destroy the work by the construction of which the water privilege shall have been created whenever, in the opinion of the Legislature, such work shall cease to be advantageous to the State."

This being a public law of the State the claimants must be conclusively presumed to have put themselves in the condition they describe with a full knowledge of the law.

The Canal Commissioners' Report to the General Assembly of December 1, 1878, approves the report of the superintendent of canals in which he reports having visited the Little Wabash river improvements to make such examination as would assist the Commissioners in determining what should be done with that property in which he states that said improvements are worthless except for the water power and recommends that nothing further be done until the leases should expire at which time in his opinion it would be for the interest of the State to abandon the improvement altogether.

Again the Canal Commissioners in their report of December 1, 1880, referring to the Little Wabash river improvement, say that it is worthless, except for water power and the amount necessary to be expended to keep

the lock and dam in order will be much larger than the sum to be received from its rental for water power and recommend that the improvement be abandoned on the part of the State.

Again said Canal Commissioners in their report of December 1, 1882, say that they have cancelled the leases between the State and other parties granting water power priviliges "thereby relieving the State from making further expenditures for the maintenance of this lock and dam," and showing that the amount on hand for this improvement had been credited to the general fund of the Illinois and Michigan canal and Illinois river improvements, thus showing an intention on the part of the State to abandon said improvement.

The same recommendation was made by the Canal Commissioners to the General Assembly which passed the Act of 1887.

We cannot see how under these circumstances there can be any legal liability upon the part of the State. Nor can we see that the claimants were misled by any act of the State or its agents into making the improvements for which they claim damages. This claim is therefore wholly rejected.